## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| GERARD STUDER, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> vs.<br><br>LTD FINANCIAL SERVICES, L.P., SYNERGETIC COMMUNICATION, INC., and UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY OF NORTH CAROLINA,<br><br>   Defendants. | Case No.: 16-cv-915<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for outrageous collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Gerard Studer is an individual who resides in the Eastern District of Wisconsin (Waukesha County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Defendant LTD Financial Services, L.P. ("LTD") is a foreign limited partnership with its principal place of business located at 7322 Southwest Freeway, Suite 1600, Houston, Texas 77074.

6. LTD is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Defendant Synergetic Communication, Inc. ("Synergetic") is a foreign corporation with its principal place of business located at 5450 NW Central, Suite 220, Houston, Texas 77092.

8. Synergetic is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Defendant United Guaranty Residential Insurance Company of North Carolina ("United Guaranty") is a foreign corporation with its principal place of business located at 230 North Elm Street, Greensboro, North Carolina 27401.

10. According to its website, United Guaranty provides "default insurance for closed-end second mortgages and home equity lines of credit." https://www.ugcorp.com/about-us.html.

11. United Guaranty is in the business of purchasing and collecting debts, including mortgage loans, incurred for personal, family or household purposes, which are in contractual default at the time of purchase. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003).

12. United Guaranty took assignment of the alleged debt referred to in this action, after the account was allegedly in default. Upon information and belief, United Guaranty insured the previous holder of the mortgage loan and took assignment of the mortgage loan after paying the previous creditor's claim.

13. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser*, 323 F.3d at 536, *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

14. With respect to the Plaintiff and the Class, United Guaranty is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### Studer's Mortgage Loan

15. On or around August 29, 2005, Plaintiff obtained a mortgage loan from First Franklin, a Division of National City Bank ("National City") on Plaintiff's principal residence at 2737 E. Elizabeth Avenue, St. Francis, Wisconsin.

16. The mortgage loan at issue in this action (hereinafter, the "mortgage loan") was a "second mortgage," junior to the primary mortgage encumbering the property.

17. PNC Financial Services acquired National City on December 31, 2008. Upon information and belief, PNC acquired Studer's mortgage loan in the transaction.

18. Upon information and belief, the mortgage loan was held in trust and was serviced by Select Portfolio Servicing, Inc. ("SPS") up to May 5, 2015.

19. On or around May 1, 2015, PNC or its successor in interest assigned ownership of Plaintiff's mortgage loan to United Guaranty.

3

20. At the time PNC or its successor in interest transferred Plaintiff's mortgage loan to United Guaranty, the mortgage loan was in default. Plaintiff was several monthly payments behind.

21. Studer had filed a chapter 13 bankruptcy petition on September 16, 2011, which was voluntarily dismissed on August 29, 2014. At the time of dismissal, the mortgage loan was still in default.

22. After the bankruptcy was dismissed, Studer made no further payments on the mortgage loan.

**Collection Letters**

23. On or about September 17, 2015, LTD mailed a debt collection letter to Plaintiff regarding the alleged mortgage loan debt, allegedly owed to United Guaranty. A copy of this letter is attached to this complaint as Exhibit A.

24. Upon information and belief, the alleged debt that LTD was attempting to collect was incurred for personal, family or household purposes. As stated above, the debt was a second mortgage loan on Studer's primary residence.

25. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit A is a form debt collection letter used by LTD to attempt to collect alleged debts.

27. Upon information and belief, Exhibit A is the first written communication that LTD sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

28. Exhibit A states that the "Balance" of the debt is $29,838.36.

4

29. On or about October 27, 2015, LTD mailed another debt collection letter to Plaintiff regarding the alleged mortgage loan debt. A copy of this letter is attached to this complaint as Exhibit B.

30. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31. Upon information and belief, Exhibit B is a form debt collection letter used by LTD to attempt to collect alleged debts.

32. Exhibit B states that the "Balance" of the debt is $29,970.69.

33. The difference between the "Balances" on Exhibits A and B is $132.33.

34. On or about April 22, 2016, Synergetic mailed a debt collection letter to Plaintiff regarding the same alleged mortgage loan debt. A copy of this letter is attached to this complaint as Exhibit C.

35. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

36. Upon information and belief, Exhibit C is a form debt collection letter used by Synergetic to attempt to collect alleged debts.

37. Upon information and belief, Exhibit C is the first written communication that Synergetic sent to Plaintiff regarding the alleged debt to which Exhibit C refers.

38. Exhibit C states that the "Amount of Debt" is $36,365.87.

39. The difference between the "Balances" on Exhibits B and C is $6,395.18, or about 1,279.04 per month over the five months between the dates Exhibits B and C were purportedly mailed.

40. Exhibit C identifies the "Original Creditor" as "Recove."

41. On or about May 23, 2016, Synergetic mailed another debt collection letter to Plaintiff regarding the alleged mortgage loan debt. A copy of this letter is attached to this complaint as Exhibit D.

42. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

43. Upon information and belief, Exhibit D is a form debt collection letter used by Synergetic to attempt to collect alleged debts.

44. Exhibit D states that the "Amount of Debt" is $36,681.93.

45. The difference between the "Balances" on Exhibits C and D is $316.06.

46. Exhibit D also identifies the "Original Creditor" as "Recove."

47. Each of these letters miscalculates and misrepresents both the original creditor and the amount due such that the unsophisticated consumer could not figure out how much Studer actually owes or from whom he obtained the alleged debt.

48. The huge discrepancy in the differences between balances – $132 one month, over $1,200 for several months, and then $316 for another month – cannot be a correct calculation of the interest and fees accruing on the loan.

49. Defendants may be adding the portion of the monthly payment that would be applied to the principal to the total balance. The principal amount of a mortgage loan on real property, however, does not rise if a payment is not made. It remains the same. Thus, the "Total Amount Due" in Exhibit B should increase only by the amount of unpaid interest and late fees.

50. It is impossible to tell from any of Exhibits A-D what the correct monthly amount of interest and fees is, but it cannot vary as it does between Exhibits A-D.

51. Studer was confused as to who United Guaranty was and as to why the amount of the alleged debt had increased so drastically between Exhibits B and C.

52. Studer was confused as to who "Recove" is or why "Recove" is listed as the "Original Creditor." Studer did not know who the original creditor was, but knew it was not any person or entity named "Recove."

53. Studer had to spend time and money investigating Exhibits A-D, and the consequences of any potential responses to Exhibits A-D.

54. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-D.

55. The FDCPA presumes that violations cause injury to consumers. Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

57. United Guaranty purchased Studer's and class members' debts after they were in default. As such, United Guaranty is liable for LTD's and Synergetic's FDCPA violations. *Janetos*, 2016 U.S. App. LEXIS 6361 *18-21.

7

## THE FDCPA

58. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

60. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

62. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

63. Defendant's conduct violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## COUNT I – FDCPA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Count I is brought against Defendants Synergetic and United Guaranty.

66. Synergetic's letters identify the "Original Creditor" as "Recove."

67. The "Original Creditor" was not "Recove."

68. Plaintiff has no idea what debt Synergetic and United Guaranty were attempting to collect.

69. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

8

## COUNT II – FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. Count II is brought against all Defendants.

72. Defendants misrepresented the "Balance" / "Amount of Debt" in Exhibits A-D.

73. Each of these letters miscalculates and misrepresents the amount due such that the unsophisticated consumer could not figure out how much the consumer actually owes.

74. The huge discrepancy in the differences between balances cannot be a correct calculation of the interest and fees accruing on the loan.

75. It is impossible to tell from any of Exhibits A-D what the correct monthly amount is, but it cannot vary as it does between Exhibits A-D.

76. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

77. Plaintiff brings this action on behalf of two Classes.

78. Class 1 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the forms represented by Exhibits C or D to the complaint in this action, (c) seeking to collect a debt, owed to United Guaranty, that was assigned to United Guaranty after default, (d) incurred for personal, family or household purposes, (e) in which the original creditor is identified as "Recove", (f) on or after June 13, 2015, (g) that was not returned by the postal service. Class 1 shall be referred to as the "Recove Class."

79. Class 2 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the forms represented by Exhibits A, B, C or D to the complaint in this

action, (c) in which the difference in consecutive monthly balances varied by greater than $300.00 (d) seeking to collect a debt, owed to United Guaranty, that was assigned to United Guaranty after default, (e) incurred for personal, family or household purposes, (f) on or after June 13, 2015, (g) that was not returned by the postal service. Class 2 shall be referred to as the "Confusing Balance Class."

80. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

81. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692f, and whether Real Time mailed collection letters that were time-barred.

82. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

83. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

84. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

85. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendants for:

(a) actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  June 13, 2015

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        Shpetim Ademi (SBN 1026973)
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1046105)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        sademi@ademilaw.com
        jblythin@ademilaw.com
        meldridge@ademilaw.com